VALLEY TITLE COMPANY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Valley Title Co. v. Commissioner
Docket No. 7578-72.
United States Tax Court
T.C. Memo 1975-48; 1975 Tax Ct. Memo LEXIS 325; 34 T.C.M. (CCH) 312; T.C.M. (RIA) 750048; March 5, 1975, Filed Michael C. Ferguson, for the petitioner. Lawrence G. Becker, for the respondent. QUEALY
MEMORANDUM OPINION QUEALY, Judge: The respondent determined a deficiency in the Federal income tax return of the petitioner for the taxable year ended March 31, 1969, in the amount of $109,922.08. Due to concessions by the parties, the sole question for decision is whether petitioner sustained a deductible loss on account of the transfer of certain real property and cash in exchange for property of like kind. The deductibility of such loss depends upon whether the sum of the petitioner's basis for its property, together with the cash, exceeded the fair market value of the property acquired by the petitioner in the *326 exchange and, if so, whether the petitioner is precluded from deducting any loss so incurred on account of the nonrecognition provisions in section 1031. [1]
All of the facts have been stipulated. Such facts and the exhibits attached thereto are incorporated herein by this reference. Valley Title Co., petitioner herein, is a California corporation with its principal place of business at San Jose, California. Petitioner was engaged in the title insurance business. For the fiscal year ended March 31, 1969, petitioner filed its corporate income tax return with the district director of internal revenue, San Francisco, California. On June 17, 1964, petitioner acquired certain real property located at Second and Santa Clara Streets in San Jose, California. Petitioner subsequently removed the improvements on such property, leaving the property unimproved. On July 24, 1968, petitioner purchased a parcel of real property adjacent thereto. The combined properties are hereinafter referred to as the "Second Street Property." Petitioner's basis for the Second Street Property *327 was $383,185.78. The property had been acquired and was being held by the petitioner for the ultimate construction of an office building to be used by the petitioner as its principal place of business. Broadway-Hale Stores, Inc. (hereinafter referred to as "Broadway-Hale") operated a department store in a brick building located at First and San Carlos Streets in the City of San Jose (hereinafter referred to as the "First Street Property"). Broadway-Hale held a 15 percent interest in this property and the remaining 85 percent interest had been sold some years previously by Broadway-Hale to an unrelated corporation and leased back. On July 30, 1968, Broadway-Hale gave an exclusive listing for the sale of the First Street Property for $1,700,000 cash, or on terms acceptable to Broadway-Hale, to Cooper-Challen Realty Co., Inc., a realty brokerage firm. A broker from that firm thereupon approached petitioner with the suggestion that it might be desirable for the petitioner to acquire the First Street Property, which had a building, to be used as petitioner's principal place of business rather than to construct a new building on the Second Street Property then owned by petitioner. *328 On November 13, 1968, petitioner, through Cooper-Challen Realty Co., Inc., made an offer to exchange the Second Street Property and to pay $900,000 in cash for the First Street Property. After some negotiation, on November 27, 1968, Broadway-Hale submitted to petitioner a counter proposal whereby Broadway-Hale would sell the First Street Property to the petitioner in consideration for the Second Street Property, together with a cash payment of $925,000, less a real estate commission of $50,000. In effect, Broadway-Hale accepted the petitioner's original proposal, subject to splitting the real estate commission between the buyer and the seller. This proposal was accepted by the petitioner. On or about January 31, 1969, petitioner delivered to Title Insurance and Trust Co., as escrow agent, title to the Second Street Property and $925,000 in cash. Simultaneously, Broadway-Hale, as owner of a 15 percent interest in the First Street Property, and the owner of the remaining 85 percent therein, each conveyed by separate deeds to the escrow agent their respective interests in that property. In the escrow agreement, the total sales price of the First Street Property was stated to be $1,100,000, *329 of which $175,000 was allocable to Broadway-Hale and the remainder of $925,000 was allocable to the owner of the 85 percent interest. The escrow likewise set forth the sales price of the Second Street Property as $175,000. The transaction was consummated through the escrow by the conveyance of the First Street Property to the petitioner, the conveyance of the Second Street Property to Broadway-Hale, and the payment of the cash to the holder of the 85 percent interest in the First Street Property. In February 1969, in accordance with a prearranged plan, the First Street Property was contributed to a partnership in which petitioner had a 45 percent interest, petitioner's principal stockholder had a 25 percent interest, and three employees of petitioner each had a 10 percent interest. Legal title to the property remained in the petitioner, subject to the partnership agreement whereby the beneficial interest therein had been contributed to the capital of the partnership. The partnership thereupon leased back approximately 50 percent of the First Street Property to the petitioner for a period of 15 years. For property tax purposes, the County of Santa Clara placed an assessed value *330 on the Second Street Property as of January 31, 1969, of $75,570. At the same time, the assessed value of the combined interest in the First Street Property was $416,230. By law, such property is required to be assessed by Santa Clara County at 25 percent of the full fair market value. On December 4, 1968, petitioner submitted an application for a loan to the Bank of America in order to obtain the funds to acquire the First Street Property. In that application, it was stated that the cost of the First Street Property to the petitioner would amount to $1,350,000. On December 5, 1968, an appraiser for the Bank of America certified that the appraised fair market value of the First Street Property was $1,500,000. On or about August 7, 1969, Broadway-Hale sold the Second Street Property to Cooper-Challen Realty Co., Inc., as "trustee," for the sum of $250,000. This property was thereafter conveyed to a limited partnership. In its corporate income tax return for the fiscal year ended March 31, 1969, petitioner deducted a loss of $208,185.78, on account of the transfer of the Second Street Property to Broadway-Hale, said loss being the difference between the basis of such property *331 amounting to $383,185.78 and the purported value of $175,000 allocated to said property in the escrow agreement. In his notice of deficiency, the respondent disallowed the deduction of the loss on the grounds that petitioner had not established that a loss was sustained and that even if a loss was sustained, such loss is not recognizable because the transaction constituted an exchange of the Second Street Property for property of like kind within the meaning of section 1031. Petitioner argues that section 1031(a) applies only where both parties to the transaction meet the test prescribed in the statute. [2] Petitioner relies on a subsequent transfer of the Second Street Property by Broadway-Hale to preclude the applicability of section 1031(a), both with respect to Broadway-Hale and with respect to the petitioner. Secondly, petitioner argues that the disproportionate amount of cash involved in the exchange precludes the applicability of section 1031(a). Finally, petitioner argues that by reason of the prearranged transfer of the First Street Property by the petitioner to a partnership, in which petitioner had only a 45 percent interest, petitioner did not hold that property "either *332 for productive use in trade or business or for investment" within the meaning of section 1031(a). It is unnecessary to consider whether the transfer by petitioner of the Second Street Property to Broadway-Hale qualifies within the nonrecognition provisions of section 1031(a) unless, however, the Court finds that the fair market value of the First Street Property received by the petitioner in the exchange was less than the sum of petitioner's basis in the Second Street Property ($383,185.78), plus $925,000. With respect to this issue, petitioner has the burden of proof. Rule 142, *333 Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111 (1933); Bernuth v. Commissioner,470 F. 2d 710 (C.A. 2, 1972), affirming 57 T.C. 225 (1971); Cimarron Trust Estate,59 T.C. 195 (1972). To sustain its burden, petitioner relies principally on the allocation of $175,000 as the price of the Second Street Property in the escrow agreement. That allocation was made, however, for the convenience of Broadway-Hale. The allocation has no bearing on the total consideration agreed upon by the petitioner for the transfer. Other evidence consisted of the appraised value of the properties for county taxes, the consideration stated by the petitioner in a loan application, an appraisal by the appraiser for the lender, and a sale of the Second Street Property some 7 months later for $250,000. Taken as a whole, the evidence not only is in conflict with the claim of the petitioner that the value of the Second Street Property was not more than $175,000, but is insufficient to enable this Court to make a definitive finding with respect to value. In the absence of more convincing evidence of value, the Court *334 must necessarily accept the presumption of correctness which attaches to the respondent's determination. Accordingly, the Court finds that the fair market value of the First Street Property, as of the date of the exchange, was not less than $1,308.185.78. In accordance with the above, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. SEC. 1031. EXCHANGE OF PROPERTY HELD FOR PRODUCTIVE USE OR INVESTMENT. (a) Nonrecognition of Gain or Loss From Exchanges Solely in Kind. -- No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment.↩