T.C. Memo. 1996-564

UNITED STATES TAX COURT

HENRY PETER NOVICK AND CAROLYN S. NOVICK, Petitioners
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3478-94.                    Filed December 30, 1996.

<u>Gino P. Cecchi</u>, for petitioners.

<u>Scott Johnson</u> and <u>Lori M. Mersereau</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, <u>Judge</u>:    Respondent determined the following deficiencies and accuracy-related penalties with respect to petitioners' Federal income taxes:

| Year | Deficiency | Accuracy-Related Penalty Sec. 6662(a) |
|------|-----------|----------------------------------------|
| 1989 | $18,167 | $2,933 |

| 1990 | 24,146 | 4,829 |
| 1991 | 39,162 | 7,832 |

The deficiencies result from respondent's determination that petitioners are not entitled to deductions to the extent claimed for Schedule E rental losses, miscellaneous employee business expenses, charitable contributions, and investment interest. The accuracy-related penalty is based on respondent's determination that petitioners were negligent with respect to the preparation of their tax returns. For the reasons that follow, we sustain respondent's determinations in all respects.

All section references are to the Internal Revenue Code in effect for the years under consideration. All Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT[1]

Petitioners, husband and wife, resided in Sacramento, California, at all relevant times, including the time they filed their petition. They filed joint Federal income tax returns for each of the 3 years under consideration.

Petitioner Henry Novick is a physician, specializing in urology. Dr. Novick conducted his medical practice in corporate form until 1986, at which time the corporation was dissolved. During the years under consideration (1989-91), he was an employee

---

[1] The stipulation of facts and the accompanying exhibits are incorporated by this reference.

of Sacramento Sierra Medical Group; petitioner Carolyn Novick was a housewife.

Schedule E Rental Losses

During each of the years under consideration, petitioners reported income and expenses attributable to three rental activities on Schedule E of their tax returns: The Texas rental, the Tahoe rental, and the F Street (Sacramento) Duplex rental. Respondent disallowed numerous expenses claimed by petitioners with respect to each of these rental properties and recalculated petitioners' net Schedule E gain/loss after applying the passive activity loss rules.[2] Petitioners do not dispute the application of the passive activity loss rules to the rental expenses claimed on Schedule E of their tax returns. The following tables show the income/loss reported by petitioners and the amounts allowed by respondent with respect to each of the three rental properties, before application of the passive activity loss rules (hereafter referred to as Pre-Pals):

_____

[2] Pursuant to sec. 469(a), a passive activity loss is generally not allowed as a deduction for the year sustained. Sec. 469(d)(1) defines a passive activity loss as the amount by which (A) the aggregate losses from all passive activities for the taxable year exceed (B) the aggregate income from all passive activities for that year. Passive activities are those activities that involve the conduct of a trade or business in which the taxpayer does not materially participate. Sec. 469(c)(1). Rental activity ordinarily is treated as a passive activity irrespective of whether there is material participation. Sec. 469(c)(2), (4).

## TEXAS RENTAL

| | 1989 | | 1990 | | 1991 | |
|---|---|---|---|---|---|---|
| | Reported | Allowed | Reported | Allowed | Reported | Allowed |
| Income (Rent & royalty) | $2,268 | $2,268 | $3,767 | $3,767 | $2,344 | $2,344 |
| Advertising | 220 | 0 | 405 | 0 | 0 | 0 |
| Auto/travel | 2,654 | 0 | 0 | 1,211 | 2,832 | 0 |
| Cleaning/ maintenance | 210 | 0 | 920 | 0 | 345 | 0 |
| Repairs | 244 | 322 | 284 | 0 | 428 | 1,170 |
| Supplies | 141 | 0 | 792 | 0 | 695 | 0 |
| Taxes | 145 | 145 | 310 | 140 | 164 | 78 |
| Utilities | 0 | 0 | 156 | 0 | 0 | 0 |
| Association fee | 0 | 0 | 2,889 | 0 | 0 | 0 |
| Paint | 0 | 0 | 255 | 0 | 112 | 0 |
| Gardening & landscaping | 360 | 360 | 674 | 0 | 420 | 0 |
| Licenses | 108 | 0 | 111 | 0 | 25 | 0 |
| Management fees | 220 | 0 | 235 | 0 | 320 | 0 |
| Pest Control | 82 | 0 | 100 | 0 | 622 | 0 |
| Security & safety | 42 | 0 | 223 | 0 | 0 | 0 |
| Telephone | 190 | 0 | 217 | 0 | 318 | 0 |
| Oil prod exp | 48 | 0 | 108 | 0 | 1,700 | 0 |
| Depletion | 0 | 0 | 0 | 0 | 269 | 269 |
| Fence | 0 | 0 | 0 | 0 | 478 | 0 |
| Net Profit Pre-Pals | (2,396) | 1,441 | (3,912) | 2,273[1] | (6,384) | 827 |

[1]  No explanation was given for the mathematical discrepancy.

## TAHOE RENTAL

| | 1989 | | 1990 | | 1991 | |
|---|---|---|---|---|---|---|
| | Reported | Allowed | Reported | Allowed | Reported | Allowed |
| Income (Rent & royalty) | $ 1,140 | $ 1,140 | $ 980 | $ 980 | $ 220 | $ 220 |
| Advertising | 480 | 0 | 695 | 0 | 113 | 0 |
| Auto/travel | 681 | 357 | 1,520 | 1,372 | 0 | 0 |
| Cleaning/ maintenance | 204 | 230 | 511 | 130 | 490 | 0 |
| Insurance | 484 | 484 | 502 | 493 | 505 | 84 |
| Legal and other professional fees | 100 | 0 | 2,157 | 0 | 859 | 0 |
| Repairs | 1,548 | 1,287 | 2,168 | 573 | 984 | 298 |
| Supplies | 1,236 | 104 | 1,173 | 0 | 1,082 | 0 |
| Taxes | 2,123 | 212 | 2,344 | 2,286 | 855 | 312 |
| Utilities | 1,228 | 741 | 1,330 | 1,120 | 746 | 636 |
| Security | 0 | 312 | 0 | 0 | 0 | 0 |
| Telephone | 632 | 172 | 541 | 0 | 681 | 67 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Gardening & landscaping | 541 | 0 | 890 | 653 | 2,280 | 480 |
| Licenses | 644 | 0 | 610 | 0 | 0 | 0 |
| Management fees | 0 | 0 | 519 | 0 | 425 | 0 |
| Paint | 2,434 | 0 | 841 | 0 | 390 | 0 |
| Pest control | 255 | 0 | 983 | 0 | 239 | 0 |
| Plumbing | 223 | 0 | 409 | 0 | 289 | 0 |
| Security | 647 | 0 | 0 | 0 | 513 | 0 |
| Move | 0 | 0 | 0 | 0 | 0 | 969 |
| Snow removal | 0 | 0 | 0 | 0 | 0 | 25 |
| Depreciation | 13,354 | 13,354 | 13,354 | 13,354 | 0 | 0 |
| | | | | | | |
| Net Profit Pre-Pals | (25,674) | (18,025)[1] | (30,049)[1] | (19,001) | (10,231) | (1,548)[1] |

[1] No explanation was given for the mathematical discrepancy.

## F STREET (SACRAMENTO) DUPLEX RENTAL

| | 1989 | | 1990 | | 1991 | |
|---|---|---|---|---|---|---|
| | Reported | Allowed | Reported | Allowed | Reported | Allowed |
| Income (Rent & royalty) | $12,614 | $12,614 | $14,604 | $14,604 | $15,000 | $15,000 |
| Advertising | 124 | 0 | 418 | 0 | 214 | 0 |
| Auto/travel | 780 | 51 | 820 | 0 | 0 | 0 |
| Cleaning/ maintenance | 896 | 270 | 672 | 150 | 620 | 0 |
| Insurance | 351 | 352 | 356 | 356 | 375 | 363 |
| Mortgage interest paid to bks. | 3,448 | 0 | 3,553 | 0 | 0 | 0 |
| Legal & other professional fees | 0 | 0 | 690 | 0 | 582 | 0 |
| Repairs | 5,068 | 1,308 | 4,127 | 0 | 1,844 | 338 |
| Supplies | 635 | 241 | 1,029 | 0 | 2,342 | 123 |
| Taxes | 2,390 | 1,255 | 2,592 | 0 | 2,690 | 2,660 |
| Utilities | 1,711 | 839 | 1,520 | 1,106 | 1,619 | 1,374 |
| Gardening/ landscaping | 658 | 0 | 743 | 536 | 781 | 480 |
| License/tax | 630 | 541 | 521 | 0 | 280 | 0 |
| Management fees | 1,241 | 360 | 1,091 | 40 | 820 | 0 |
| Paint | 2,146 | 318 | 1,682 | 0 | 417 | 0 |
| Pest control | 209 | 120 | 1,120 | 0 | 212 | 0 |
| Plumbing/repair | 756 | 0 | 296 | 0 | 180 | 0 |
| Security | 510 | 39 | 723 | 0 | 611 | 0 |
| Telephone | 0 | 0 | 210 | 0 | 298 | |
| Maintenance | 0 | 0 | 0 | 150 | 0 | 0 |
| Glass | 0 | 0 | 0 | 56 | 0 | 0 |
| Other | 0 | 0 | 0 | 264 | 0 | 0 |
| Garage | 0 | 0 | 0 | 1,035 | 0 | 0 |
| Fence | 0 | 0 | 0 | 0 | 192 | 0 |
| Accounting | 0 | 0 | 1,035 | 0 | 1,100 | 0 |
| Depreciation | 4,429 | 4,622 | 4,429 | 4,760 | 4,430 | 4,667 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Net Profit Pre-Pals | (13,368) | 2,298 | (13,023) | 6,150[1] | (4,607) | 4,995 |

[1] No explanation was given for the mathematical discrepancy.

Respondent's auditor reduced/disallowed the amounts claimed by petitioners primarily on the basis of failure to substantiate. In some instances, the amount was reduced/disallowed on the basis that either the expenditures involved were personal in nature or petitioners failed to indicate the reason the expenditures were claimed.

## Miscellaneous Employee Business Expenses

For each of the years under consideration, petitioners claimed a deduction for miscellaneous employee business expenses on Schedule A of their tax returns. The following table shows the items of expenses claimed by petitioners, and the amounts allowed by respondent, for each of the years under consideration:

| | 1989 | | 1990 | | 1991 | |
|---|---|---|---|---|---|---|
| | Reported | Allowed | Reported | Allowed | Reported | Allowed |
| Auto | $ 7,020 | 0 | $ 7,020 | 0 | $ 7,020 | 0 |
| Other asset-- depreciation | 119 | $ 775 | 6,015 | $ 1,632 | 43 | $ 1,459 |
| Office expenses | 8,252 | 0 | 18,922 | 0 | 0 | 0 |
| Promotion | 1,962 | 0 | 0 | 0 | 0 | 0 |
| Storage and rent | 18,400 | 0 | 18,340 | 0 | 18,340 | 0 |
| Equipment | 8,000 | 0 | 0 | 0 | 0 | 0 |
| Conferences | 13,764 | 0 | 10,349 | 0 | 0 | 0 |
| Legal & accounting | 16,610 | 19,916 | 2,665 | 4,080 | 39,281 | 27,980 |
| Advertising pamphlet | 6,750 | 6,750 | 0 | 0 | 0 | 0 |
| Tax return prep. | 689 | 639 | 0 | 0 | 0 | 685 |
| Dues & pubs. | 0 | 0 | 2,567 | 0 | 840 | 0 |
| Maintenance | 0 | 0 | 3,668 | 0 | 4,026 | 1,461 |
| Education | 0 | 0 | 0 | 0 | 6,257 | 0 |
| Leasehold impr. | 0 | 0 | 12,500 | 19,616 | 12,500 | 19,287 |
| Moving | 0 | 0 | 0 | 0 | 2,212 | 0 |
| Total | 81,566 | 28,080 | 82,046 | 25,328 | 90,519 | 50,872 |

The office and storage expenses relate to Dr. Novick's use of petitioners' residence to store medical records and equipment from Dr. Novick's previously dissolved professional corporation. (During the years under consideration, Dr. Novick did not conduct his medical practice, nor did he see patients, in his home.) The stored medical records were those of so-called inactive patients -- patients that Dr. Novick had not seen within 3 years. The medical equipment stored in petitioners' residence was equipment that Dr. Novick had used in his prior medical practice and was not needed by Sacramento Sierra Medical Group, Dr. Novick's employer during all years under consideration. Petitioners determined that 30 percent of their home was used for storage of Dr. Novick's medical records and equipment. They calculated the office/storage expenses by taking 30 percent of their home mortgage payments, interest, taxes, insurance, maintenance, and utilities. Petitioners also claimed a deduction for home mortgage interest and real estate taxes on Schedule A of their tax returns, thereby double counting these items. The parties stipulated that petitioners' home office/storage was not for the convenience of Sacramento Sierra Medical Group.

The automobile expenses relate to an automobile that Mrs. Novick purportedly used to transport medical files, charts, and x rays from petitioners' home to Dr. Novick's medical office.

Petitioners allocated 90 percent of the automobile for business use and 10 percent for personal use.

Dr. Novick received reimbursement from his employer for claimed employee business expenses. Petitioners presented no documentation at trial to substantiate any of the disallowed miscellaneous employee business expenses.

Charitable Contributions

For each of the years under consideration, petitioners claimed a deduction for charitable contributions. The following table shows the amounts of charitable contributions claimed by petitioners, and the amounts allowed and disallowed by respondent, for each of the years under consideration:

|  | 1989 | 1990 | 1991 |
|---|---|---|---|
| Claimed | $15,145 | $21,111 | $25,443 |
| Allowed | 13,421 | 15,450 | 18,931 |
| Disallowed (at issue) | 1,724 | 5,661 | 6,502 |

Petitioners presented no documentation at trial to substantiate their claims for charitable contributions in excess of those allowed by respondent.

Investment Interest

Petitioners claimed a $15,000 investment interest deduction on their 1990 tax return which was disallowed by respondent. As best we can glean from the record (which with respect to this item is inadequate), the deduction relates to interest on a $50,000 loan secured by a life insurance policy with General Services Life

Insurance Co. Respondent allowed petitioners a deduction for $7,500 (as a personal interest expense) of the $15,000 claimed. Petitioners presented no documentation at trial to substantiate their claim for the investment interest expense deduction.

Preparation of Tax Returns

Petitioners' tax returns for each of the years under consideration were prepared by their accountant, Donald Fenton. Mr. Fenton prepared the returns by entering the information provided to him by petitioners. Mr. Fenton did not receive documentation to verify or substantiate the deductions claimed by petitioners; he took the list of expenses they provided to him at face value. Mr. Fenton was not aware that some of the employee business expenses claimed by petitioners were, in actuality, reimbursed by Dr. Novick's employer.

OPINION

Deductions are a matter of legislative grace. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers bear the burden of establishing that they are entitled to the claimed deductions. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 114 (1933). This includes the burden of substantiating the amount and purpose of the item claimed. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 90 (1979), affd. per curiam 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), Income Tax Regs.

Petitioners claim that respondent's notice of deficiency is "uninformative", and "therefore respondent has the burden of producing evidence from which the petitioners' tax liability can be determined". Petitioners' claim is without merit. While respondent's notice of deficiency to petitioners is not a model of clarity, nonetheless, it is not uninformative. Moreover, Rule 142 places the burden of proof on petitioners, except in situations not relevant herein. "This burden is a burden of persuasion; it requires * * *[petitioners] to show the merits of [their] claim by at least a preponderance of the evidence." Rockwell v. Commissioner, 512 F.2d 882, 885 (9th Cir. 1975), affg. T.C. Memo. 1972-133. Where the Commissioner has made a deficiency determination denying the taxpayer's entitlement to a claimed deduction (such as here), "the taxpayer has 'the burden of producing enough evidence to rebut the deficiency determination and the burden of persuasion in substantiating a claimed deduction'." Goldberg v. United States, 789 F.2d 1341, 1343 (9th Cir. 1986) (quoting Valley Title Co. v. Commissioner, 559 F.2d 1139, 1141 (9th Cir. 1977), revg. and remanding T.C. Memo. 1975-48).

Schedule E Rental Losses

Section 212 provides a deduction for all ordinary and necessary expenses paid or incurred during the taxable year with respect to the management, conservation, or maintenance of property held for the production of income. However, the taxpayer must be

able to provide verification or substantiation for any deduction claimed with respect to such expenses. In the case before us, no documentation was introduced to substantiate any of the disallowed rental expenses. Indeed, Dr. Novick and Mr. Fenton admitted that they did not have any documents to substantiate the disallowed rental deductions.

The only evidence in the record offered to support the disallowed rental expenses relating to the Texas rental was Dr. Novick's testimony with regard to the automobile and travel expenses. Dr. Novick testified that in 1989, petitioners and their three children (ages 1, 7, and 14) took a trip to inspect the Texas property and to show petitioners' children the property lines of the property they would one day inherit.

The only evidence in the record to support the disallowed rental expenses relating to the Tahoe property was Dr. Novick's testimony that because the Tahoe property was a cedar house, it had to be pressure-sealed with sealant oil each year. No testimony or documentation was offered as to the cost for this treatment.

The evidence offered by petitioners with respect to establishing their entitlement to the deduction for rental activity losses was woefully short of that required. Petitioners neither produced enough evidence to rebut respondent's deficiency determination nor produced enough evidence to satisfy their burden of persuasion. Consequently, petitioners are not entitled to any

Schedule E rental expenses in excess of those allowed by respondent.

Miscellaneous Employee Business Expenses

Petitioners introduced no documentation to substantiate any of the disallowed miscellaneous employee business expenses for any of the years under consideration. Nor was there any meaningful testimony to support petitioners' entitlement to the claimed employee business expenses.

With respect to the claimed office and storage expenses (which relate to Dr. Novick's use of petitioners' residence to store medical records of inactive patients and certain medical equipment), petitioners failed to come within any of the exceptions provided by section 280A(c) to the general rule denying a deduction for home office expenses.[3] We specifically note that (1)

---

[3] Sec. 280A provides generally that no deduction is allowable with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. Sec. 280A(c) provides exceptions to this general rule.

Pursuant to sec. 280A(c)(1), a taxpayer may deduct an otherwise allowable item of expense allocable to the portion of a taxpayer's personal residence which is used exclusively on a regular basis:

> (A) [as] the principal place of business for any trade or business of the taxpayer,
>
> (B) as a place of business which is used by patients, clients, or customers in meeting with the taxpayer in the normal course of * * * [the taxpayer's] trade or business, or
>
> (C) in the case of a separate structure which is not attached to the dwelling unit,
>
> (continued...)

petitioners stipulated that the use of their home as an office/storage was not for the convenience of Dr. Novick's employer (thus, petitioners do not come within the exception under section 280A(c)(1)), and (2) the only items stored at petitioners' home were medical equipment and files (thus, petitioners do not come within the exception under section 280A(c)(2)).

With respect to the claimed depreciation on the automobile that Mrs. Novick purportedly used to transport medical files, charts, and x rays from petitioners' home to Dr. Novick's medical office, we note that Mrs. Novick was not an employee of either Dr. Novick or Sacramento Sierra Medical Group, nor was the use of the car for that purpose required as a condition of her husband's employment. Thus, even assuming arguendo the automobile was used 90 percent for such purposes, the depreciation would not be deductible. See sec. 280F(d)(3). Moreover, even if Dr. Novick used the automobile for such purposes, that use still would not be

---

[3](...continued)
in connection with the taxpayer's trade or business.

However, where the taxpayer is an employee, the exclusive use requirement set forth above must be for the convenience of the taxpayer's employer.

Sec. 280A(c)(2) permits a taxpayer to deduct an otherwise allowable item of expense with respect to the use of a taxpayer's personal residence "which is used on a regular basis as a storage unit for the inventory of the taxpayer held for use in the taxpayer's trade or business of selling products at retail or wholesale, but only if * * * [the personal residence] is the sole fixed location of such trade or business."

deductible, as there was no evidence introduced to show that Sacramento Sierra Medical Group (Dr. Novick's employer) required as a condition of Dr. Novick's employment that Dr. Novick transport the medical files to and from his home. Further, petitioners stipulated that the storage of the medical records at their home was not for the convenience of Dr. Novick's employer.

Petitioners claimed employee business expenses other than the home/office and automobile expenses which were disallowed by respondent. Dr. Novick received reimbursement from his employer for some of these expenses. Mr. Fenton was not aware of the reimbursement when he prepared petitioners' tax returns.

Respondent's determination with respect to the disallowed miscellaneous employee business expenses for each of the years under consideration is sustained.

Charitable Contributions

Section 170 allows a deduction for charitable contributions, but only if verified pursuant to regulations. In the case at bar, petitioners had no documentation to verify (substantiate) their claims for charitable contributions in excess of those allowed by respondent. Because the disallowed deductions have not been verified, petitioners are not entitled to them.

Investment Interest

Petitioners claimed a $15,000 deduction for investment interest on their 1990 tax return. Petitioners presented no

evidence to substantiate this deduction. Nonetheless, respondent allowed petitioners $7,500 of the $15,000 claimed. Because petitioners failed to satisfy their burden of proof with respect to the remaining $7,500, we sustain respondent's determination in this regard.

Accuracy-Related Penalty

Respondent determined that petitioners were negligent with respect to the preparation of their 1989-91 returns and accordingly determined that they are liable for the accuracy-related penalty under section 6662(a) for each of the years under consideration.

The accuracy-related penalty is equal to 20 percent of any portion of an underpayment attributable to the taxpayer's negligence or disregard of rules or regulations. Sec. 6662(a) and (b)(1). Negligence is defined as the failure to exercise the due care that a reasonable, prudent person would exercise under similar circumstances. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Neely v. Commissioner, 85 T.C. 934, 947 (1985). A taxpayer has the burden of proving that the Commissioner's determination is in error. Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860-861 (1982).

Petitioners claim they were not negligent because the returns for the years under consideration were prepared by an accountant. However, reliance on professional advice, by itself, is not an absolute defense to negligence. A taxpayer must first demonstrate

that his reliance was reasonable. <u>Freytag v. Commissioner</u>, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991).

In the case at bar, Mr. Fenton, petitioners' accountant, acted merely as a scrivener; he did not audit or verify the information given him by petitioners. Hence, we do not accept petitioners' reliance on a professional advice defense.

Giving consideration to all the facts before us, we conclude that petitioners were negligent and that they disregarded rules and regulations with respect to the preparation of their 1989-91 tax returns: They double deducted home mortgage interest and real estate taxes; they claimed a $15,000 investment interest expense when they had documentation indicating that, at best, they were entitled to a $7,500 interest deduction; they claimed miscellaneous employee business expenses for which Dr. Novick had been reimbursed by his employer; they overstated expenses related to their rental activities; and they failed to maintain adequate records. Consequently, we sustain respondent's determination that petitioners are liable for the accuracy-related penalty on the amount of the underpayment for 1989, 1990, and 1991.

To reflect concessions by respondent,

<u>Decision will be entered under Rule 155</u>.