996 F.2d 1229
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jiji PATEL; Silloo Patel, Defendants-Appellants.
 No. 92-10622.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 11, 1993.
Decided May 20, 1993.
 
 Before: REINHARDT, TROTT and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Jiji and Silloo Patel appeal their convictions for income tax evasion, in violation of 26 U.S.C. § 7201. They were convicted by a jury of willfully underreporting on their 1983 and 1984 income tax returns the income derived from their medical practice. We determine no errors were committed by the district court, and we affirm.
 
 
 3
 * JUROR MISCONDUCT
 
 
 4
 The Patels maintain the district court erred in not conducting an evidentiary hearing to determine whether alleged juror misconduct tainted the verdict in this case. We review for abuse of discretion "the trial court's choice of procedures for investigating allegations of juror misconduct--for example, whether to conduct an evidentiary hearing, or whether to subpoena jurors." Hard v. Burlington Northern R.R. Co. 870 F.2d 1454, 1462 (9th Cir.1989). An evidentiary hearing is justified only when evidence of juror misconduct is sufficient on its face to require setting aside the verdict. Id. at 1461. "A trial court has considerable discretion in determining whether to hold an investigative hearing on allegations of jury misconduct or bias and in defining its nature and extent." United States v. Soulard, 730 F.2d 1292, 1305 (9th Cir.1984).
 
 
 5
 The Patels allege the jury verdict was tainted by extraneous evidence, because one of the jurors wrote down her thoughts concerning the case during a recess and later read those thoughts to the rest of the jury during deliberations. The Federal Rules of Evidence permit testimony on the questions of "whether extraneous prejudicial information was improperly brought to the jury's attention" and "whether any outside influence was improperly brought to bear on any juror." Fed.R.Evid. 606(b) (emphasis added). Where affidavits or other evidence of juror statements are used to impeach a verdict, the district court must examine the material and determine whether it falls within the category of admissible juror testimony permitted by Rule 606(b). Burlington Northern, 870 F.2d at 1461.
 
 
 6
 The district court determined no hearing was necessary because there was no evidence that any extraneous information was considered by the jury. The juror whose actions were at issue stated in her affidavit that the notes were entirely of her own making, reflected only her own thoughts, and were drafted with no outside assistance. She further stated the only reason the notes were made was because she felt more comfortable speaking from notes than extemporaneously. The district judge accepted these statements as "uncontroverted." In contrast are cases examined by this circuit where jurors engaged in outside experimentation, the results of which were brought into the jury room, or consulted other outside sources of information. See, e.g., United States v. Navarro-Garcia, 926 F.2d 818 (9th Cir.1991) (juror conducts out-of-court experiment to duplicate weight of drugs found in defendant's car); Marino v. Vasquez, 812 F.2d 499 (9th Cir.1987) (jurors conduct out-of-court experiment and consult dictionary for meaning of term "malice"); United States v. Bagnariol, 665 F.2d 877 (9th Cir.1981) (independent library research by juror), cert. denied, 456 U.S. 962 (1982). Because the notes contained only the thoughts of the juror who drafted them and are no more prejudicial than mental notes a juror might make and later articulate for her fellow jurors, the district court did not abuse its discretion in determining no extrinsic material was presented to the jury in this case.
 
 
 7
 The Patels' suppositions regarding the possible content of those notes is immaterial. As long as those notes were not the result of outside influence or the consideration of extraneous experimentation or evidence, the content of those notes is entirely beyond the purview of this court, as is supposition concerning what may have broken a jury deadlock in this case. "[I]ntrinsic jury processes will not be examined on appeal and cannot support reversal." Id. at 887.
 
 II
 ADMINISTRATIVE SUMMONS
 
 8
 The Patels contest the validity of the administrative summonses issued by the Internal Revenue Service ("IRS") in this case. Appellants argue the district court should have examined the "good faith" motives of the IRS, because the agency cannot issue such summonses solely for criminal purposes. Appellants rely on United States v. Lasalle Nat'l Bank, 437 U.S. 298, 318 (1978), which held that an administrative summons issued by the IRS was valid only if the investigation by the IRS had a civil component. However, Lasalle no longer states the law. Congress amended 26 U.S.C. § 7602 in 1982 to eliminate the requirement that the investigation giving rise to the summons have a civil component. Since that amendment, the IRS may issue a summons in order to "inquir[e] into any offense connected with the administration or enforcement of the internal revenue laws." 26 U.S.C. § 7602(b) (emphasis added). This court has recognized that Congress superseded Lasalle by amending the statute and that the civil-criminal purpose dichotomy is no longer controlling. Weiss v. Commissioner, 919 F.2d 115, 116 n. 1 (9th Cir.1990); United States v. Abrahams, 905 F.2d 1276, 1280, 1281 n. 4 (9th Cir.1990). The Patels recognize we have determined Lasalle no longer controls and invite us to overturn Weiss and Abrahams. We decline that invitation.
 
 
 9
 The only "good faith" showing required of the IRS is a " 'minimal' showing that it issued the summons for a legitimate purpose, and that the information sought in the summons was relevant to that purpose." Abrahams, 905 F.2d at 1280. The IRS has more than adequately made such a minimal showing. Appellants do not seriously question the legitimate purpose of the summonses but argue the IRS must act in "good faith" and not issue summonses for solely criminal purposes. As already discussed, that argument is without merit.
 
 
 10
 The only restriction remaining on the IRS's issuance of an administrative summons is that the agency may not issue a summons after that case has been referred to the Justice Department for criminal enforcement. 26 U.S.C. § 7602(b); Weiss, 919 F.2d at 115 n. 1; Abrahams, 1281 n. 4. Appellants argue the IRS continued to issue summonses after Justice Department referral. This argument is based on the fact the Justice Department invited the IRS on April 16, 1987 to join a grand jury investigation of possible criminal wrongdoing by the Patels. That invitation was not accepted until June 18, 1987, after the IRS had issued more summonses and taken a sworn statement from Dr. Patel.
 
 
 11
 The district court determined the IRS did not illegally use its summons authority, because the case was not referred to the Justice Department for criminal prosecution until June 18. We agree. A Justice Department referral is in effect when "the Secretary has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, such person for any offense connected with the administration or enforcement of the internal revenue laws." 26 U.S.C. § 7602(c)(1). An invitation by the Justice Department to join a grand jury investigation is not sufficient to invoke the statute. The IRS must either agree to join such an investigation or refer a case to the Justice Department for criminal prosecution. That did not occur until June 18, 1987 and the IRS issued no summonses after that date. The district court did not err in determining the administrative summonses issued prior to the June 18 referral were valid.
 
 III
 JURY COMPOSITION
 
 12
 Appellants maintain the district court erred by not determining whether the composition of the jury selected in their case violated both their Sixth Amendment rights and the requirements of the Jury Selection and Service Act, 28 U.S.C. § 1861 et seq. They claim in their briefs that the jury "appeared to be of caucasian origin", and noted there were apparently only four hispanic members of the jury panel. This composition, they claim, constituted an "obvious absence of minority representation" and thus warranted a district court hearing.
 
 
 13
 We review de novo a challenge to the composition of a jury. United States v. Sanchez-Lopez, 879 F.2d 541, 546 (9th Cir.1989). "The test for a constitutionally selected jury is the same, whether challenged under the Sixth Amendment of the Constitution or under the Jury Selection and Service Act." United States v. Miller, 771 F.2d 1219, 1227 (9th Cir.1985). To establish a prima facie case of a fair-cross section requirement, a defendant must show: 1) the excluded group is a "distinctive" group in the community; 2) that group's representation in jury venires is unfairly disproportional to their representation in the community; and 3) that underrepresentation is due to systematic exclusion from the jury selection process. Duren v. Missouri, 439 U.S. 357, 364 (1979).
 
 
 14
 Unfortunately, cursory observations concerning the composition of one jury are not sufficient to establish a prima facie case that a jury is not drawn from a fair cross-section of the community. Appellants have failed to meet even one of the Duren requirements for establishing a prima facie case. First, they have not specified what "distinct" group within the community had been excluded from the jury. Appellants only note that four of the members of the jury appeared to be hispanic. It is not obvious whether they are noting the apparent lack of more hispanic jurors, the apparent lack of black jurors, or perhaps the lack of representatives of other "distinct" minority groups within the community. Their general claim of an absence of "minority" representation specifies no distinct group as required by Duren.
 
 
 15
 Furthermore, a lack of representation on one jury is insufficient to establish a prima facie case. "[A] violation of the fair cross-section requirement cannot be premised upon proof of underrepresentation in a single jury. While juries must be drawn from a source fairly representative of the community, the composition of each jury need not mirror that of the community." Miller, 771 F.2d at 1228. Appellants' observations concerning the apparent lack of an unspecified group from only their jury is insufficient. Finally, appellants fail to make any claim that the unspecified underrepresentation from their jury was in any way the result of systematic exclusion.
 
 
 16
 Because of appellants' failure to establish any semblance of a prima facie case of a violation of the fair cross-section requirement, the district court did not err in refusing to conduct a hearing.
 
 IV
 JURY INSTRUCTIONS
 
 17
 The Patels allege the district court committed several errors in instructing the jury in this case. Because defense counsel did not object to the proposed jury instructions at trial, we review only for plain error. United States v. Boone, 951 F.2d 1526, 1541 (9th Cir.1991). "Plain error" is a highly prejudicial error affecting substantial rights. United States v. Payne, 944 F.2d 1458, 1463 (9th Cir.1991), cert. denied, 112 S.Ct. 1598 (1992).
 
 
 18
 Appellants allege the jury instructions did not include the "affirmative act" element of 26 U.S.C. § 7201, but that instead the court's instructions on the third element were that "the defendant acted willfully with the intention of defrauding the government of taxes owed." The Patels' argument on this issue is barred by the invited-error doctrine, because the court's instruction on the third element was proposed by the defense. "When the defendant himself proposes the jury instruction he later attacks on appeal, review is denied under the 'invited error' doctrine." United States v. Guthrie, 931 F.2d 564, 567 (9th Cir.1991); United States v. Baldwin, No. 92-30027, slip op. 2223, 2230 (9th Cir. Mar. 10, 1993). This case does not fall under the extremely narrow exception to this doctrine in "exceptional situations" where reversal is mandated "to preserve the integrity of the judicial process or to prevent a miscarriage of justice." United States v. Schaff, 948 F.2d 501, 506 (9th Cir.1991).
 
 
 19
 The Patels contest the district court's alleged failure to instruct the jury regarding the Patel's "good faith" reliance on tax professionals to properly prepare their returns. However, a " 'failure to give an instruction on a 'good faith' defense is not fatal so long as the court clearly instructed the jury as to the necessity of "specific intent" as an element of the crime.' " United States v. Dorotich, 900 F.2d 192, 193 (9th Cir.1990) (quoting United States v. Solomon, 825 F.2d 1292, 1297 (9th Cir.1987), cert. denied, 484 U.S. 1046 (1988)). The district court did give the jury instructions regarding a defendant's "good faith" belief he is meeting the requirements of the tax laws and also that the defendants had to have the intent to defraud the government. A "defendant is not entitled to any particular form of an instruction so long as the instructions given fairly and adequately cover the defendant's theories of defense." Solomon, 825 F.2d at 1295. The failure of the district court to give a specific reliance instruction was not plain error.
 
 
 20
 Appellant's brief arguments concerning the content of the aiding and abetting instruction and the court's failure to define "negligence" are not convincing. Neither of those instructions was plainly erroneous.
 
 V
 SUFFICIENCY OF THE EVIDENCE
 
 21
 The Patels argue the evidence was insufficient to sustain their convictions for tax evasion. There is sufficient evidence to support a conviction if, " 'reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction. United States v. Reyes-Alvarado, 963 F.2d 1184, 1187 (9th Cir.), cert. denied, 113 S.Ct. 258 (1992).
 
 
 22
 Our review of the evidence indicates it was sufficient to support the convictions in this case. We note specifically the evidence that both of the Patels maintained strong personal control of the financial aspects of their medical practice and were the only persons with access to business records; although the accountants who prepared their returns were given the business ledgers in their entirety, Mrs. Patel gave the accountants redacted working copies of those ledgers which indicated substantially reduced income; Mrs. Patel later personally confirmed the accuracy of the income figures the accountants used to prepare the returns; Dr. Patel signed all of the payroll checks issued to him and his wife from his professional corporation and thus was well aware of the income both received; in one year Dr. Patel signed and issued such payroll checks in the amount of $136,363, but the return filed for that year indicated income of only $65,325; after the returns with grossly underreported income were filed, the Patels submitted at least three financial statements in support of loan applications to different banks indicating significantly higher income than that reported to the IRS. In addition, we note that although Dr. Patel did not sign the 1984 return when it was filed, he did admit at trial that he reviewed and signed that return a few months later when it was submitted in conjunction with the loan applications.
 
 
 23
 Viewed in the light most favorable to the government, the evidence supports the Patels' convictions for income tax evasion in violation of 26 U.S.C. § 7201.
 
 VI
 INEFFECTIVE ASSISTANCE OF COUNSEL
 
 24
 Appellants finally argue they were denied effective assistance of counsel, in derogation of their rights under the Sixth Amendment. "To demonstrate ineffective assistance of counsel, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense." United States v. Signori, 844 F.2d 635, 638 (9th Cir.1988) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The Patels must demonstrate "that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases." Iaea v. Sunn, 800 F.2d 861, 864 (9th Cir.1986).
 
 
 25
 However, we ordinarily do not review claims of ineffective assistance of counsel on direct review. United States v. Sarkissian, 841 F.2d 954, 958 (9th Cir.1988). "[T]he customary procedure in this Circuit for challenging the effectiveness of defense counsel in a federal criminal trial is by collateral attack on conviction under 28 U.S.C. § 2255, and this Court has been chary of analyzing insufficiency of counsel claims on direct appeal." United States v. Rewald, 889 F.2d 836, 859 (9th Cir.1989) (quotations omitted). "This is so because usually such a claim cannot be advanced without the development of facts outside the original record." United States v. Wagner, 834 F.2d 1474, 1482 (9th Cir.1987) (quotations omitted).
 
 
 26
 We recognize a narrow exception to this procedure when "the defendant's legal representation was so inadequate as obviously to deny him his sixth amendment right to counsel" and "the trial court's failure to take notice sua sponte of the problem 'might constitute plain error which may be considered on direct appeal.' " Id. (quoting United States v. Kazni, 576 F.2d 238, 242 (9th Cir.1978)) (internal quotations omitted).
 
 
 27
 Our review of the record indicates the performance of the Patels' counsel was not so obviously inadequate that the district court should have raised the issue sua sponte. Appellants argue counsel should have ordered audit lists on potential jurors as authorized by I.R.C. § 6103(h)(5). Although we have questioned the trial court's denial of a motion made pursuant to that statute and the IRS's failure to comply with such a request, see United States v. Hashimoto, 878 F.2d 1126 (9th Cir.1989); United States v. Sinigaglio, 942 F.2d 581 (9th Cir.1991), we have never held nor do we now believe that counsel's failure to request such information represents obvious incompetence. As the district court noted, defense counsel may make the strategic decision that such information would not be beneficial. Moreover, the district court corrected any alleged deficiency by asking the jurors if they had ever been audited by the IRS or the California Franchise Tax Board. "The district court was certainly not required by this record to question counsel's trial strategy, and it was not plain error for the court to fail to raise sua sponte the inadequacy of [the Patels'] representation." Wagner, 834 F.2d at 1483.
 
 
 28
 We find nothing else in the record which indicates the performance of appellants' counsel was obviously outside the range of competence demanded of attorneys in criminal cases.
 
 
 29
 AFFIRMED.
 
 
 30
 REINHARDT, Circuit Judge, concurring separately:
 
 
 31
 I concur in the result but I would decide the juror misconduct and the jury composition issues in a different manner.
 
 
 32
 I do not believe that what the juror did here was consistent with the judge's instructions or with good practice. Nor do I believe that the other jurors understood that they had the right to prepare written memoranda and read them to their fellow jurors. The result is that one juror was permitted to exercise disproportionate influence on her fellow jurors. Nevertheless, I do not believe the district judge abused his discretion in concluding that the juror's conduct did not require an evidentiary hearing or a reversal.
 
 
 33
 I would decide the jury composition issue on the ground of forfeiture. The issue was not raised until after voir dire, which is untimely under 28 U.S.C. § 1867(a).
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3